**IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **NAZYR ILIASOV,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-26-1709-R** |
| | ) | |
| **TODD BLANCHE, et al.,** | ) | |
| | ) | |
| **Respondents.**[1] | ) | |

## REPORT AND RECOMMENDATION

Petitioner Nazyr Iliasov, a noncitizen proceeding with counsel,[2] seeks a writ of habeas corpus under 28 U.S.C. § 2241. Doc. 1.[3] United States District Judge David L. Russell referred the matter to the undersigned Magistrate Judge for proceedings consistent with 28 U.S.C. § 636(b)(1)(B), (C). Doc. 4. Respondents filed a response, Doc. 9, and Petitioner has replied, Doc. 10.

---

[1] Chris Gantt, the current Warden of Cimarron Correctional Facility, is not a federal official and the Government did not file a response on his behalf. Doc. 9, at 1 n. 1.

[2] This Report and Recommendation "uses the term 'noncitizen' as equivalent to the statutory term 'alien.'" *Nasrallah v. Barr*, 590 U.S. 573, 578 n.2 (2020) (citing 8 U.S.C. § 1101(a)(3)).

[3] Citations to a court document are to its electronic case filing designation and pagination. Except for capitalization, quotations are verbatim unless otherwise indicated.

For the reasons set forth below, the undersigned recommends the Court grant Petitioner's request for habeas relief in part and order Respondents to provide Petitioner with an individualized custody hearing under 8 U.S.C. § 1226(a) within ten days or otherwise release Petitioner.

## I. Factual background and procedural history.

Petitioner is a native and citizen of Russia. Doc. 1, Ex. 1. On July 30, 2023, Petitioner arrived at the San Ysidro port-of-entry, where he presented himself to border officials and applied for admission to the United States. Doc. 1, Ex. 3, at 1. Also on July 30, 2023, the Department of Homeland Security (DHS) served Petitioner with a Notice to Appear (NTA), placed him in standard removal proceedings under 8 U.S.C. § 1229a, designated him as an "arriving alien," and charged him with being inadmissible under § 212(a)(7)(A)(i)(I)[4] of the INA. Doc. 1, Ex. 3, at 1, 4. DHS granted Petitioner humanitarian parole

[4] This section is codified at 8 U.S.C. § 1182(a)(7)(A)(i)(I), which provides that any noncitizen, who at the time of application for admission was not in possession of (1) a valid unexpired entry document as required by the Immigration and Nationality Act (INA), and (2) a valid travel document/document of identity and nationality as required by regulations is inadmissible. *Id.* § 1182(a)(7)(A)(i)(I).

under § 212(d)(5) of the INA,[5] with a parole expiration date of July 28, 2025.[6] Doc. 1, Ex. 2, at 1. *See also* Doc. 9, at 1-2.

On March 21, 2024, Petitioner filed an Asylum Application with the Immigration Court. Doc. 9, Ex. 3. On June 17, 2026, the Oklahoma Highway Patrol arrested Petitioner for suspected immigration violations and took him to the ICE ERO office in Tulsa, Oklahoma for processing on June 18, 2026. Doc. 9, Ex. 4, at 1-2. ICE took Petitioner into custody pursuant to a warrant. Doc. 9, Ex. 5, at 1. ICE then transferred Petitioner to the Cimarron Correctional Facility in Cushing, Oklahoma, where he remains detained. Doc.

---

[5] This section is codified at 8 U.S.C. § 1182(d)(5)(A), which authorizes the Secretary of Homeland Security to parole noncitizens into the United States on a case-by-case basis for urgent humanitarian reasons or significant public benefit. *Id.* § 1182(d)(5)(A).

[6] Petitioner asserts he was placed in expedited removal proceedings and that he was paroled into the country after a positive credible fear determination. Doc. 1, at 17-19. Respondents dispute that account, and the record favors their interpretation. There is no notice of expedited removal, no record of any credible fear interview or determination, and the record reflects a CBP officer issued the NTA placing Petitioner in standard removal proceedings under 8 U.S.C. § 1229a the same day he presented himself for inspection, which is also the same day that he was paroled. Doc. 1, Ex. 3, at 1, 4. Since the parties agree Petitioner was paroled under § 1182(d)(5)(A), the undersigned does not find it necessary to resolve this factual dispute. Whether Petitioner was paroled following a credible fear determination or not, it is undisputed that he is not presently in expedited removal proceedings so this has no bearing on Petitioner's present detention.

9, Ex. 4, at 2-3.[7] An Immigration Judge (IJ) ordered Petitioner removed on August 11, 2026, after briefing closed in this matter. Petitioner's appeal is pending before the Board of Immigration Appeals.[8]

## II. Petitioner's claims.

Petitioner asserts four claims for relief: (1) a violation of procedural due process under the Fifth Amendment; (2) unlawful re-detention in violation of the INA; (3) unlawful revocation of humanitarian parole in violation of the INA and applicable federal regulations; and (4) a violation of the Administrative Procedure Act (APA). *See* Doc. 1, at 22-25.

Petitioner seeks his immediate release. Doc. 1, at 26. In the alternative, Petitioner asks this Court to conduct a bond hearing at which the Government bears the burden of justifying his continued detention. *Id.* He further requests an injunction barring Respondents from transferring him out of this District or removing him during the pendency of these proceedings,[9] and an award of

---

[7] *See* ICE Detainee Locator, locator.ice.gov/odls/#/results (last visited Sep. 10, 2026).

[8] *See* EOIR Automated Case Information System, acis.eoir.justice.gov/en/caseInformation (last visited Sep. 10, 2026).

[9] The Court addressed this issue in its Order for Response, Doc. 7, at 2.

attorney's fees and costs under the Equal Access to Justice Act,[10] and any further relief deemed appropriate by this Court. *Id.*

## III. Standard of review.

An application for a writ of habeas corpus "is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). Habeas corpus relief is warranted only if the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "Challenges to immigration detention are properly brought directly through habeas." *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas v. Davis,* 533 U.S. 678, 687-88 (2001)).

## IV. Discussion.

### A. Section 1226(a) governs Petitioner's detention.

Petitioner claims "Respondents cannot argue [his] detention is justified pursuant to 8 U.S.C. § 1225(b)." Doc. 1, at 19. He does not, however, explicitly invoke which statute he believes governs his detention. Respondents contend

---

[10] To the extent that Petitioner may be entitled to EAJA fees and costs as a prevailing party, Petitioner must seek those separately after a final judgment. 28 U.S.C. § 2412(d)(1)(B); *see also Daley v. Ceja*, 158 F.4th 1152, 1166 (10th Cir. 2025) (interpreting "EAJA's broad language to unambiguously authorize fees in habeas actions challenging immigration detention"). Thus, the Court need not address this request at this time.

Petitioner is detained under § 1225(b)(2)(A), but they acknowledge that the Tenth Circuit's decision in *Santillan Quiroz v. Mullin*, 180 F.4th 1226 (10th Cir. 2026), "compels a different outcome," and they ask that any relief be limited to an order directing a bond hearing within seven days. Doc. 9, at 2-3.

In his reply, Petitioner clarifies his position that "[t]he question of whether [his] detention is governed by 8 U.S.C. § 1225(b)(2) or 8 U.S.C. § 1226(a) is resolved by the warrant for arrest . . . [which] states on its face that Respondents acted under 8 U.S.C. § 1226(a)." Doc. 10, at 11. Yet Petitioner also maintains that *Santillan Quiroz* "does not apply" because that decision concerned a noncitizen who "entered the United States without admission and inspection and this is why the statutory analysis of [] § 1225(b)(2) versus [] § 1226(a) was necessary." *Id.* Instead, Petitioner asserts his case "is governed by the question of whether his parole pursuant to 8 USC § 1182 was unlawfully and prematurely revoked by Respondents and what the constitutional implications and constitutional remedies are for that premature revocation." *Id*. at 3.

"[B]ecause the legality of Petitioner's continued detention depends upon the source of the Government's detention authority," the undersigned must identify the statutory basis for Petitioner's detention as a threshold matter. *Zhakhonov v. Grant*, No. CIV-26-350-J, 2026 WL 1865418, at *2 (W.D. Okla. June 29, 2026).

Section 1225 and 1226 authorize detention in different domains. Section 1225 applies primarily to aliens "seeking admission" to the United States, while § 1226 "generally governs the process of arresting and detaining" noncitizens "pending a decision on whether the alien is to be removed from the United States." *Jennings v. Rodriguez*, 583 U.S. 281, 288-89 (2018). Section 1225 generally applies at the border and § 1226 in the interior. *See, e.g.*, *Santillan Quiroz*, 180 F.4th at 1237 ("We hold that noncitizens who entered the United States and were thereafter detained in the interior of the country are usually subject to § 1226(a) (and thus eligible for bond), not § 1225(b)(2)(A).").

Petitioner's current detention "is not part of the inspection process," and it did not "arise from an attempted entry at a port of entry." *Zhakhonov*, 2026 WL 1865418, at *3. Rather, like the petitioner in *Zhakhonov*, "Petitioner was paroled into the United States, permitted to reside in the interior of the country for several years, pursued his asylum application, and complied with the conditions of his release before being re-detained." *Id.* "Under those circumstances, Petitioner's detention is more naturally characterized as detention 'pending a decision on whether the alien is to be removed from the United States' within the meaning of § 1226(a)." *Id.*[11]

---

11 Petitioner's parole documentation reflects an expiration date of July 28, 2025, Doc. 1, Ex. 2, at 1, and ICE did not take him into custody until

Petitioner is correct that *Santillan Quiroz* involved a noncitizen who entered without inspection and was not admitted or paroled, but this distinction does not mean that *Santillan Quiroz* is inapplicable as Petitioner claims. Parole "shall not be regarded as an admission of the alien," 8 U.S.C. § 1182(d)(5)(A), and a paroled noncitizen "shall not be considered to have been admitted," *id.* § 1101(a)(13)(B). Petitioner therefore remained an applicant for admission notwithstanding his parole, *id.* § 1225(a)(1), which is the same status the petitioner in *Santillan Quiroz* occupied. And what the case ultimately addressed, which was the detention authority applicable to a noncitizen arrested in the interior during the pendency of his removal proceedings, describes Petitioner's circumstances.

The growing consensus in this Court is that individuals granted humanitarian parole under 8 U.S.C. § 1182(d)(5)(A) and later detained by ICE

---

approximately eleven months later, Doc. 9, Ex. 4, at 1-2. Petitioner maintains his parole continued past that date and that his detention amounted to an unlawful revocation of that parole. Doc. 10, at 3-8. The Court need not resolve that dispute to identify the governing detention authority. The regulations addressing the termination of parole and the statutes authorizing detention address separate questions; 8 C.F.R. § 212.5(e) does not indicate whether Petitioner's June 2026 detention is authorized under § 1225 or § 1226, and § 1182(d)(5)(A) is not a source of detention authority since it provides only that upon termination of parole the noncitizen's "case shall continue to be dealt with in the same manner as that of any other applicant for admission." *See Clark v. Martinez*, 543 U.S. 371, 385 (2005) ("[W]e find nothing in [the text of § 1182(d)(5)(A)] that affirmatively authorizes detention.").

within the United States are detained under 8 U.S.C. § 1226(a). *See Arevalo Castillo v. Figueroa*, No. CIV-26-162-HE, Doc. 16 (W.D. Okla. July 7, 2026) (finding a petitioner whose humanitarian parole was terminated is entitled to an individualized bond hearing); *Ochilov v. Grant*, No. CIV-26-526-R, 2026 WL 1896139, at *1-2 (W.D. Okla. July 1, 2026) (rejecting the "theory that Petitioner retains his status as an 'arriving' noncitizen subject to mandatory detention under § 1225(b)(1) irrespective of the fact that Petitioner was released and allowed to live in the country for several years" where the petitioner may have been "paroled under 8 U.S.C. § 1182(d)(5)(A)"); *Zhakhonov*, 2026 WL 1865418, at *2-3 (finding "that Petitioner's termination of humanitarian parole did not automatically return him to mandatory detention under § 1225(b)(1)" and that "Petitioner's present detention is governed by § 1226(a)"); *Drozdov v. Lyons*, No. CIV-26-365-SLP, 2026 WL 1470929, at *2 (W.D. Okla. May 26, 2026) ("[R]evocation of parole under § 1182(d)(5) does not render a noncitizen in Petitioner's circumstances subject to detention under § 1225(b)(1)."); *see also Rafibaev v. Noem*, 2026 WL 607559, at *2 (D. Colo. Mar. 4, 2026) (finding it was "illogical to suggest that [the petitioner's] re-detention [after termination of humanitarian parole was] governed by § 1225(b)(1), which . . . governs procedures for the inspection of aliens arriving in the United States who have not been admitted or paroled.").

**B. A bond hearing is the appropriate remedy.**

Because Petitioner is detained under § 1226(a), the undersigned concludes a bond hearing is the appropriate remedy.

"Unlike § 1225(b)(1), § 1226(a) contemplates individualized custody determinations and authorizes release on bond or conditional parole pending completion of removal proceedings." *Zhakhonov*, 2026 WL 1865418, at *3. Here, the Government has not provided Petitioner with an individualized custody determination since his re-detention. Doc. 1, at 6; *see, e.g.*, *Zhakhonov*, 2026 WL 1865418, at *3 ("[T]he process afforded by § 1226(a) itself serves as the mechanism through which a detainee's liberty interest is protected."). Because this is "the very process Congress prescribed for detainees held pursuant to § 1226(a)," the Court should order Respondents to provide Petitioner with a bond hearing under § 1226(a). *Id.*; *see also Navarrete v. Mullin*, No. CIV-26-224-SLP, 2026 WL 2323345, at *2 (W.D. Okla. Aug. 11, 2026) (finding the petitioner had a "protected liberty interest arising from her release on her own recognizance" and that the level of process owed to her was "for Respondents to provide [her] with a bond hearing pursuant to 8 U.S.C. § 1226"); *Todyrenchuk v. Warden of Diamondback Corr. Facility*, No. CIV-26-1243-J, 2026 WL 2186977, at *3 (W.D. Okla. July 29, 2026) ("[T]he Court concludes the proper remedy in this case is not immediate release, but an

individualized bond hearing before an Immigration Judge exercising jurisdiction under § 1226(a)."); *cf. Santillan Quiroz*, 180 F.4th at 1237.

The Court should thus grant the petition in part and order Respondents to provide Petitioner with a bond hearing under § 1226(a) within ten days or otherwise release Petitioner.[12] *See Santillan Quiroz*, 180 F.4th at 1251 n.13 (directing district court to order the government to provide the petitioner a bond hearing within seven days "[b]ecause [the petitioner] can properly be subject to detention under § 1226(a)"); *see also Colin v. Holt*, No. CIV-25-1189-D, 2025 WL 3645176, at *6 (W.D. Okla. Dec. 16, 2025) ("Petitioner has not received a bond hearing and Respondents raise no objection challenging their obligations to provide bond hearings for noncitizens that are detained under 8 U.S.C. § 1226(a)."). The Court should decline Petitioner's request for this Court

---

[12] Petitioner's reliance on *Mesa v. Figueroa* to establish immediate release as the remedy for an unlawful parole revocation is misplaced. Doc. 10, at 9-10. Although the Magistrate Judge recommended the petitioner's release on parole-revocation and due process grounds, the District Judge, on *de novo* review, held that § 1226(a) governed the petitioner's detention and ordered a bond hearing, declining both the recommended remedy and the analysis supporting it. *Mesa v. Figueroa*, No. CIV-26-775-J, 2026 WL 2123868, at *2 (W.D. Okla. July 23, 2026).

to conduct his bond hearing,[13] as well as his request to require the Government to bear the burden of justifying his continued detention.[14]

---

[13] Section 1226(a) commits the custody determination to the agency in the first instance. *See* 8 C.F.R. § 236.1(d)(1). The decisions Petitioner cites, Doc. 1, at 20, do not support departing from that allocation here. Both involved petitioners the immigration system had already failed in some identifiable way: an "atypical" petitioner with disabilities requiring a competency evaluation, *L.G.M. v. LaRocco*, 788 F. Supp. 3d 401, 402-03, 406 (E.D.N.Y. 2025), and a petitioner whose immigration court bond hearing had already been held and found constitutionally inadequate, *Chiguano v. Lowe*, 2025 WL 3187161, at *3-4 (M.D. Pa. Nov. 14, 2025). Petitioner, in contrast, has not had the custody determination hearing before an IJ, as the statute dictates. Petitioner also submits statistical evidence of nationwide bond-denial trends, Doc. 1, Ex. 6, and the undersigned notes that while it is notable that Petitioner has grounded the request in evidence, the aggregate denial rates say nothing about whether the IJ assigned to Petitioner's case can serve as a neutral arbiter. Should the hearing ordered here prove constitutionally deficient, Petitioner may appeal the custody determination to the BIA, *see* 8 C.F.R. § 236.1(d)(3), and/or seek appropriate habeas relief.

[14] Petitioner asks the Court to require the Government to prove by clear and convincing evidence that he is a danger to the community or a flight risk. Doc. 1, at 26. This Court has repeatedly declined to order burden shifting at this stage. *See Zhang v. U.S. Dist. Ct.*, No. CIV-26-1022-D, 2026 WL 2323190, at *1 (W.D. Okla. Aug. 11, 2026) (declining "to place the burden on the Government to justify Petitioner's detention pending removal proceedings, at this time"); *Rangel v. Mullin*, No. CIV-26-568-D, 2026 WL 1625653, at *2 n.2 (W.D. Okla. June 5, 2026) (same). The undersigned does not recommend it here.

### C. The Court should decline to address Petitioner's remaining claims.

Given the undersigned's recommendation to grant Petitioner a bond hearing, the Court should decline to address the merits of Petitioner's remaining claims for relief. The Court can grant him relief under § 1226(a). *See Colin*, 2025 WL 3645176, at *6 n.3 ("Because the Court grants the relief the Petitioner requests based on the applicability of 8 U.S.C. § 1226(a), the Court declines to decide the merits of Petitioner's due process claim."); *see also Ramos Perez v. Grant*, 2026 WL 2033144, at *2 n.2 (W.D. Okla. July 14, 2026) (declining to address the petitioner's remaining claims after ordering a bond hearing).

Petitioner argues that his statutory and constitutional claims cannot be parsed, because the regulatory violations he alleges produced the constitutional injury. Doc. 10, at 8. But the deprivation he identifies, detention without an individualized assessment of whether his continued custody is warranted and without an opportunity to be heard on that question, is what a bond hearing under § 1226(a) supplies. The Court therefore need not decide whether Petitioner holds a protected liberty interest, or what additional

process the Constitution would require, because the process the statute prescribes reaches the injury alleged.[15]

Finally, the Court should decline to reach Petitioner's APA claim because his § 2241 petition supplies another adequate remedy for his detention challenge. *See* 5 U.S.C. § 704 (limiting APA review to agency action "for which there is no other adequate remedy in a court"); *Soberanes*, 388 F.3d at 1310.

**V. Recommendation and notice of right to object.**

For the reasons set forth above, the undersigned recommends the Court grant Petitioner's habeas petition in part and **order Respondents to provide Petitioner with an individualized bond hearing before a neutral Immigration Judge within ten days or else release Petitioner.** The undersigned also recommends that the Court order Respondents to certify their compliance with the Court's order by filing a status report within ten business days of the Court's order and promptly providing a copy of this order to counsel for the Warden of the Cimarron Correctional Facility.

The undersigned advises the parties of their right to file an objection to this Report and Recommendation with the Clerk of this Court by September 21, 2026, in accordance with 28 U.S.C. § 636 and Federal Rule of Civil

[15] Because the Court need not resolve the adequacy of the parole-termination record, Petitioner's request that the Court order production of his complete EARM history and Form I-213, Doc. 10, at 5-7, requires no action.

Procedure 72.[16] The undersigned further advises the parties that failure to make timely objections to this Report and Recommendation waives the right to appellate review of both factual and legal questions contained herein. *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991). This Report and Recommendation disposes of the issues referred to the undersigned Magistrate Judge in the captioned matter.

**ENTERED** this 16th day of September, 2026.

SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE

[16] Given the expedited nature of these proceedings, the undersigned has reduced the typical objection time to this Report and Recommendation. *See* Fed. R. Civ. P. 72(b)(2) advisory committee's note to 1983 addition (noting that rule establishing 14-day response time "does not extend to habeas corpus petitions, which are covered by the specific rules relating to proceedings under Sections 2254 and 2255 of Title 28."); *see also Whitmore v. Parker,* 484 F. App'x 227, 231 & n.2 (10th Cir. 2012) ("The Rules Governing § 2254 Cases may be applied discretionarily to habeas petitions under § 2241" and that "while the Federal Rules of Civil Procedure may be applied in habeas proceedings, they need not be in every instance–particularly where strict application would undermine the habeas review process").